**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JACKIE L. WINCHELL,**

                           **Plaintiff,**                  5:14-cv-543
                                                               (GLS)

                v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                           **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Law Offices of Steven R. Dolson        STEVEN R. DOLSON, ESQ.
126 North Salina Street, Suite 3B
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN      TOMASINA DIGRIGOLI
United States Attorney                    Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
District Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Jackie L. Winchell challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Winchell's arguments, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## II. Background

On January 10, 2012, Winchell filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since January 1, 2006. (Tr.[1] at 84-85, 176-91.) After her applications were denied, (*id.* at 86-93), Winchell requested a hearing before an Administrative Law Judge (ALJ), which was held on October 16, 2013, (*id.* at 49-77, 94-95). On January 16, 2014, the ALJ issued an unfavorable decision denying the requested benefits, (*id.* at 8-26), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-6).

Winchell commenced the present action by filing her complaint on

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

May 8, 2014 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 12, 20.)

### III. Contentions

Winchell contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 12 at 3-7.) Specifically, Winchell claims that the ALJ: (1) erred in concluding that her headaches were not a severe impairment under the regulations; and (2) failed to follow the treating physician rule. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 20 at 6-10.)

### IV. Facts

The court adopts the undisputed factual recitations of the parties and the ALJ. (Dkt. No. 12 at 1; Dkt. No. 20 at 2; Tr. at 13-19.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under

3

42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severity Determination

First, Winchell contends that the ALJ's error in failing to find her headaches were a severe impairment under the regulations tainted his residual functional capacity (RFC)[3] determination, and, thus, requires remand. (Dkt. No. 12 at 5-7.) Specifically, Winchell asserts that her complaints to treatment providers of daily headaches associated with nausea, vomiting, and, sometimes, photophobia support her diagnosis of

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

[3] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

4

tension headaches and pose limitations that the ALJ failed to include in his RFC determination. (*Id.* at 6-7.) The Commissioner counters, that the ALJ properly evaluated the severity of Winchell's headaches, and his determination is supported by substantial evidence.[4] (Dkt. No. 20 at 6-8.) In particular, the Commissioner points to Winchell's normal examination results, CT scans, and MRI, and her failure to note her history of headaches to the consultative examiner. (*Id.*) The court agrees with the Commissioner that remand is not required here.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A finding of not severe is appropriate when an impairment, or combination of those impairments, "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1521(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," as well as "[u]nderstanding,

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." *Id.* § 404.1521(b). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

In this case, at step two, the ALJ determined that, among other things, Winchell's gastroparesis, gastroesophageal reflux disease (GERD), asthma, thyroid disease, cat scratch fever, disc disease, and obesity were severe impairments. (Tr. at 13-14.) Although Winchell had been diagnosed with tension headaches, the ALJ noted that imaging was negative for any intracranial abnormality, and no neurological abnormalities were found on examination. (*Id.* at 14.) The ALJ then concluded that Winchell's headaches were non-severe under the regulations because there was no evidence that they caused "more than minimal limitations on her ability to perform basic work activities." (*Id.*)

6

Undeniably, the medical evidence of record contains Winchell's complaints of headaches, sometimes associated with nausea, and Winchell was diagnosed with tension headaches by her primary care physician, Ofrona Reid. (*Id.* at 466, 534, 741, 749, 774, 804-06.) However, Dr. Reid did not believe Winchell's headaches were migraines, and this diagnosis was supported by the neurologist Winchell was referred to for evaluation. (*Id.* at 806, 833-35); *see* U.S. Dep't of Health and Human Servs., Office on Women's Health, Migraine Fact Sheet, 2 (2008) http://womenshealth.gov/publications/our-publications/fact-sheet/migraine.pdf (last visited Nov. 13, 2015) ("Compared with migraine[s],tension-type headache[s are] generally less severe and rarely disabling."). Moreover, at a physical exam in August 2013, Winchell denied suffering from frequent or recurring headaches. (Tr. at 809.) Notably, Winchell reported experiencing "some photophobia" only during her neurology consult for her headaches, (*id.* at 833), and, in fact, denied such symptoms on other occasions, (*id.* at 481, 769, 774). Winchell also failed to mention her headaches to consulting examiner Rehan Khan. (*Id.* at 663-64.) Overall, while the lack of clinical findings alone is not a basis for finding her headaches were not severe, *see Sech v. Comm'r of Soc. Sec.*, No.

7:13-CV-1356, 2015 WL 1447125, at *2-3 (N.D.N.Y. Mar. 30, 2015), here, the lack of clinical signs and laboratory findings combined with the sporadic nature of her complaints of and treatment for headaches, and the lack of any medical opinion suggesting she suffers functional limitations as a result of her headaches support the ALJ's step two determination.

## B.  Treating Physician Rule

Next, Winchell argues that the ALJ failed to properly follow the treating physician rule.  (Dkt. No. 12 at 3-5.)  According to Winchell, the ALJ erred in failing to include in his RFC determination the limitations suggested by treating gastroenterologist Bogdan Vatra, including limitations in her ability to concentrate, perform routine tasks, work with the public, and meet deadlines, as well as her need for numerous unscheduled restroom breaks throughout the workday.  (*Id.*)  The Commissioner responds that Dr. Vatra's treatment notes fail to support his restrictive opinion, and the ALJ adequately accounted for Winchell's gastrointestinal problems in his RFC determination.  (Dkt. No. 20 at 8-10.)  For the reasons that follow, the court agrees with Winchell that remand is required in this case.

Medical opinions, regardless of the source, are evaluated by

8

considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id.* (citation omitted).

In June 2012, Dr. Vatra, who had only recently begun treating Winchell, opined that she suffered from GERD and ulcerative duodenitis, which caused recurrent nausea and vomiting and persistent/recurrent abdominal pain, cramping, and tenderness. (Tr. at 765-67.) According to Dr. Vatra, among other things, these symptoms caused Winchell to need ready access to a restroom for more than ten unscheduled breaks in an average workday, and to be unable to tolerate public contact, routine, repetitive tasks at a consistent pace, strict deadlines, and close interaction with coworkers and supervisors. (*Id.* at 765-66.) The ALJ afforded "some weight" to Dr. Vatra's opinion, but discounted his opinion with respect to Winchell's need for frequent bathroom breaks because his "office notes do not document such an increased use of the bathroom." (*Id.* at 16.) Thus, the ALJ concluded that Winchell merely needed "unimpeded access to a restroom during regularly scheduled breaks." (*Id.* at 14-15.) The ALJ also determined that Winchell could perform low stress work that did not require high production quotas or fast-paced assembly line work, after noting that complaints of symptoms that would cause more severe mental limitations were absent from Dr. Vatra's treatment notes. (*Id.*)

The court concludes that, on the facts of this case, it was legal error

to discount Dr. Vatra's opinion with respect to Winchell's need for frequent unscheduled bathroom breaks solely because his treatment notes do not indicate an increased use of the bathroom. (*Id.* at 16.) Dr. Vatra is a treating physician whose opinion is deserving of controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). Here, Winchell's gastrointestinal problems are well documented, including the results of several endoscopies revealing esophagitis[5] and erosive duodenitis,[6] and a gastric emptying study, conducted in August 2013, which suggested that Winchell suffers from gastroparesis.[7] (Tr. at 431, 442-43, 463, 469, 573, 615, 760-63, 820, 846, 852, 863, 877.) Dr. Vatra prescribed Winchell several medications to treat her symptoms, including pantoprazole,[8] metoclopramide,[9] and

---

[5] Esophagitis is the inflammation of the esophagus. *See* Dorland's Illustrated Medical Dictionary, 580 (28th ed.1994).

[6] Duodenitis is the inflammation of the duodenum, or the first portion of the small intestine. *See* Dorland's Illustrated Medical Dictionary, 511 (28th ed.1994).

[7] "Gastroparesis, also called delayed gastric emptying, is a disorder that slows or stops the movement of food from the stomach to the small intestine." Nat'l Inst. of Diabetes and Digestive and Kidney Diseases, Gastroparesis, http://www.niddk.nih.gov/health-information/health-topics/digestive-diseases/gastroparesis/Pages/facts.aspx (last visited Nov. 13, 2015).

[8] "Pantoprazole is used to treat the symptoms of GERD." U.S. Nat'l Library of Med., Pantoprazole, MedlinePlus Drug information,

11

loperamide.¹⁰ (*Id.* at 791.) Further, Winchell complained of gastrointestinal problems to consultative examiner Khan, who noted that time constraints prevented him from taking a full history of such problems. (*Id.* at 664.) The ALJ did not assert, and a review by the court does not find, that Dr. Khan's opinion shed light on Winchell's need for bathroom breaks. (*Id.* at 16-18, 668.)

Because the ALJ did not provide "good reasons" for discounting the opinion of Dr. Vatra, *Petrie*, 412 F. App'x at 407, and did not have "substantial evidence" supporting his conclusion that the symptoms caused by Winchell's gastrointestinal problems can be accounted for by allowing unimpeded access to a restroom merely during regularly scheduled breaks, *see Rosa v. Callahan*, 168 F.3d 72, 80-82 (2d Cir. 1999) (holding that the ALJ did not have substantial evidence justifying her decision that the claimant retained the RFC to meet the exertional demands of

---

https://www.nlm.nih.gov/medlineplus/druginfo/meds/a601246.html (last visited Nov. 13, 2015).

⁹ Metoclopramide is used to relieve heartburn in people who have GERD, as well as the nausea, vomiting, loss of appetite, and feeling of fullness that lasts long after meals caused by slow stomach emptying. *See* U.S. Nat'l Library of Med., Metoclopramide, MedlinePlus Drug Information, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a684035.html (last visited Nov. 13, 2015).

¹⁰ "Loperamide is used to control diarrhea." U.S. Nat'l Library of Med., Loperamide, MedlinePlus Drug Information, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682280.html (last visited Nov. 13, 2015).

sedentary work, where the treating physician opined that she did not, and there was no other affirmative evidence demonstrating the claimant's RFC), the court remands this case for further consideration.  Additionally, although Dr. Vatra's treatment notes are silent as to Winchell's ability to interact with others and perform routine tasks, (Tr. at 759-63, 766, 786-93), ostensibly his opinion was based on the effects of stress on Winchell's gastrointestinal symptoms.  Therefore, on remand, the ALJ should reevaluate the limitations caused by Winchell's gastrointestinal problems, including the effect of workplace stress on her symptoms, and, if necessary, re-contact Winchell's treatment providers, or obtain the advice of a medical expert.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 23, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge

14